UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRITA ANNE HEGGOOD,

    Plaintiff,

v.                                                                                         Case No. 1:19-cv-1085
                                                                                       Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff filed an application for DIB and SSI on April 12, 2018, alleging a disability onset date of June 2, 2017. PageID.47. Plaintiff identified her disabling conditions as an ankle problem, rheumatoid arthritis, and a foot problem. PageID.255. Prior to applying for DIB and SSI, plaintiff completed the 12th grade and had past employment as a machine operator and an assembler. PageID.57, 256-257. The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 16, 2019. PageID.47-59. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I.    LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity for at least one continuous month since the alleged onset date of June 2, 2017, and that she meets the insured status of the Social Security Act through December 31, 2022. PageID.49. At the second step, the ALJ found that plaintiff had severe impairments of obesity, congenital deformity of the feet, pes plantus [sic] in the feet, osteoarthritis, rheumatoid arthritis, and rupture of the flexor tendons in the bilateral lower extremities. PageID.50. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.50.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she must not use foot controls and must not climb ramps, stairs, ladders, ropes, or scaffolds. She cannot perform work around vibrations. In addition, she needs to elevate her legs at knee height twice per eight-hour workday for approximately 20 minutes at a time.

PageID.50-51. The ALJ also found that plaintiff could not perform any of her past relevant work. PageID.56-57.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.57-58. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled sedentary work in the national economy such as inspector (55,000 jobs), assembler (60,000 jobs), and document preparer (50,000 jobs). PageID.58. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from June 2, 2017 (the alleged onset date) through July 16, 2019 (the date of the decision). PageID.58-59.

### III. DISCUSSION

Plaintiff has raised two errors on appeal.

**A. The ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence because he failed to properly weigh the opinions of treating podiatrist, Travis Piper, DPM.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). The ALJ determines the RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(e) and 416.920(e).

Plaintiff contends that the ALJ did not properly weigh Dr. Piper's opinions in developing the RFC. For claims filed after March 17, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Now, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2).[1] If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

---

[1] The regulations explain "supportability" in the following terms: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

The regulations explain "consistency" in the following terms: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ explained her evaluation of the medical opinions, stating that

> The undersigned has also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c. However, the undersigned did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c). For example, the undersigned did not provide articulation for statements addressing issues reserved to the Commissioner of the Social Security Administration (Ex. 1F/25, 72, 2F/8, 10, 12, 14, and 5F/2) or non-durational limitations (Ex. 1F/71, 2F/6, 17, 19, 4F/3, and 6F/2).

PageID.51.

The ALJ reviewed Dr. Piper's opinion as follows:

> The opinions of treating physician, Travis Piper, D.P.M., are not persuasive. On July 9, 2018, Dr. Piper opined that the claimant could sit for zero hours and stand and/or walk for zero hours in an eight-hour workday (Ex. 5F/2). He opined that the claimant could never lift less than ten pounds (*Id.*). Furthermore, the claimant's symptoms associated with her impairments were severe enough to interfere constantly with the attention and concentration required to perform simple work-related tasks (*Id.*).
>
> Dr. Piper's opinions were inconsistent with and unsupported by the medical evidence of record. For example, treatment notes highlighted that despite undergoing surgical intervention to repair her feet, the claimant's health progressively improved, which was confirmed via imaging study results (Ex. 1F/68, 2F/20-23, and 3F/18). Even the claimant testified that she could sit for up to two hours at a time without elevating her lower extremities (Testimony at 10:39:46). Furthermore, the claimant testified that her focus and concentration were pretty good (*Id.* at 10:45:05). She had no side effects from the prescribed medication, and none of her physicians prescribed an assistive device for ambulation (*Id.*). Therefore, Dr. Piper's opinions are not persuasive.

PageID.55-56.

Plaintiff contends that the ALJ misrepresented the evidence by stating that her health improved "as confirmed via imaging tests." Plaintiff's Brief (ECF No. 10, PageID.601). In this regard, the ALJ appeared to rely on plaintiff's testimony that she can sit for one to two hours without elevating her feet (PageID.73), that her focus and concentration is "[p]retty good" (PageID.78), and that she has no side effects from medication (PageID.78). With respect to the

7

medical record, the ALJ relied on plaintiff's August 24, 2017 surgical procedure (Exh. 1F/68, PageID.384), post-operative examinations in October, November, and December 2017 (Exh. 2F/20-23, PageID.422-425), and a later surgical procedure on June 28, 2018 (Exh. 3F/18, PageID.468). Given this timeline, Dr. Piper issued his July 9, 2018 opinion less than two weeks after the second surgery. The record reflects that plaintiff had follow-up appointments six, eight, 11 and 15 weeks post surgery. PageID.53. Plaintiff filed her applications for benefits on April 12, 2018, while she was in the midst of treatment, *i.e.*, after her August 2017 surgery and before her June 2018 surgery. Defendant's brief attempts to supplement or rehabilitate the ALJ's decision by providing a more detailed description of the medical record surrounding Dr. Piper's opinions. Defendant's Brief (ECF No. 11, PageID.617-620). In this regard, defendant points to another opinion issued by Dr. Piper on July 27, 2017, in which the doctor evaluated plaintiff and stated, "[s]he will continue to be removed from work." PageID.387-388, 618-619.

Plaintiff also faults the ALJ because she "erroneously attributed Dr. Piper's January 3, 2017 opinion to Plaintiff's treating physician's assistant, Mary Luckett." Plaintiff's Brief at PageID.603. Apparently, plaintiff is referring to Dr. Piper's opinion dated January 3, 2018. PageID.56, 426-427. The Court notes that the ALJ erroneously reviewed these opinions of Dr. Piper as those of Ms. Luckett and found them "somewhat persuasive":

> The opinions of treating physician's assistant, Mary Luckett, are somewhat persuasive. On January 3, 2018, Mrs. Luckett opined that the claimant needed to limit her activities due to possible complications related to excessive activity (Ex. 2F/24) [PageID.426].
>
> Mrs. Luckett's opinions were somewhat consistent with and supported by the medical evidence of record. For example, Mrs. Luckett articulated her opinions when the claimant was still recovering from surgery and needed to reduce her physical exertion so that healing could continue. However, treatment notes and imaging study results indicated that the claimant's health improved after undergoing surgeries to repair her feet (Ex. 1F/68, 2F/20-23, and 3F/18). In addition, Mrs. Luckett's opinions were vague and did not articulate the claimant's

> abilities or limitations in functional terms. Therefore, overall, Mrs. Luckett's opinions are somewhat persuasive.

PageID.56.

Based on this record, the Court concludes that the ALJ's evaluation of Dr. Piper's is flawed. First, the evaluation does not provide a context for Dr. Piper's July 3, 2018 opinion, which the doctor issued less than two weeks after plaintiff's second surgery. The ALJ does not address that opinion in the context of plaintiff's condition since her first surgery in August 2017, plaintiff's follow-up appointments over the next few months, or plaintiff's hearing testimony regarding her condition almost one year after the second surgery. In the Court's opinion, the ALJ's decision does not meet the articulation requirements under 20 C.F.R. §§ 404.1520c(a), (b), and (c)(1)-(5). Second, while the ALJ found that the January 3, 2018 opinion was "somewhat persuasive," she did not attribute this opinion to Dr. Piper contrary to the regulations. *See* 20 C.F.R. § 404.1520c(b)(1) ("when a medical source provides multiple medical opinion(s) . . . we will articulate how we considered the medical opinions . . . from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section . . ."). Accordingly, this case will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Piper's opinions.

> **B. The ALJ's RFC determination is not supported by substantial evidence as the ALJ crafted an RFC out of whole cloth and failed to support Plaintiff's need to elevate her legs.**

The ALJ's RFC determination conclude that plaintiff "needs to elevate her legs at knee height twice per eight-hour workday for approximately 20 minutes at a time." PageID.51. Plaintiff contends that

> Though the medical record is replete with evidence confirming Plaintiff's ongoing lower extremity edema (PageID.421-25, 430-31, 433, 435, 437, 439, 508-10, 526, 578[)], the only evidence in the record regarding Plaintiff's need to elevate

9

> her legs comes from the Plaintiff herself. That is plaintiff testified that she elevates her legs above her chest about six to eight hours per day. PageID.74. Clearly, the ALJ credited Plaintiff's testimony that she needed to elevate her legs. However, the ALJ then crafted an RFC that provides for leg elevation only at waist height and only two times per day for 20 minutes at a time.

Plaintiff's Brief at PageID.605-606.  Plaintiff contends that "[t]he ALJ failed to cite to any medical or other evidence of record to support his [sic] determination that Plaintiff could accommodate her edema by elevating her legs at knee height twice per eight-hour workday for approximately 20 minutes at a time," and that this case should be remanded "for proper consideration of Plaintiff's edema and need to elevate her legs above waist height." *Id*. at PageID.606.

It appears that the ALJ made this determination based upon plaintiff's conflicting testimony and Dr. Piper's recommendations:

> The claimant made inconsistent statements during the period in question. For example, the claimant stated that she could not stand or walk (Ex. 4E/6). However, she testified that she could stand for up to 20 minutes and walk for up to 15 minutes (Testimony at 10:39:34 and 10:41:37). The claimant also stated that she could only walk for about 10 or 15 steps before needing to stop and rest (Ex. 4E/6). Furthermore, the claimant testified that she could sit without elevating her lower extremities for up to two hours (Testimony at 10:39:46). However, she also testified that she elevated her legs above the chest between six to eight hours per day at the direction of her physician (*Id*. at 10:40:46). Her physician recommended that she elevate her legs to reduce swelling when necessary, and the physician gave his recommendation to elevate in the context of post-surgery recovery intended to last for up to two weeks (Ex. 2F/15 and 38).

PageID.54.

"[T]he ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Commissioner or Social Security*, 531 Fed. Appx. 719, 728 (6th Cir. 2013). *See Shepard v. Commissioner of Social Security*, 705 Fed. Appx. 435, 442 (6th Cir. 2017) ("An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at * 1-2 (July 2, 1996)."). The ALJ's function is to resolve conflicts in the

10

evidence. *See Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987). That is what the ALJ did in this case when she concluded that plaintiff "needs to elevate her legs at knee height twice per eight-hour workday for approximately 20 minutes at a time." PageID.51. Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate Dr. Piper's opinions. A judgment consistent with this opinion will be issued forthwith.

Dated: March 15, 2021    /s/ Ray Kent
RAY KENT
United States Magistrate Judge

11